1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7
8

| | |
|---|---|
| CHRISTOPHER ANDREW BISTRYSKI, | CASE NO. 3:17-cv-5369 RJB-TLF |
| Plaintiff, | REPORT AND RECOMMANDATION ON DEFENDANTS' MOTIONS TO DISMISS AND PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTIVE RELIEF |
| v. | |
| DEPARTMENT OF HEALTH SERVICES OF STAFFORD CREEK CORRECTIONS CENTER, et al., | |
| Defendants. | Noted for April 27, 2018 |

9
10
11
12
13
14
15

This is a civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff Christopher

16

Andrew Bistryski is incarcerated at the Monroe Correctional Complex-Special Offender Unit

17

(MCC-SOU). Dkt. 32 at 7, ¶ 29. He sues multiple defendants for damages and injunctive relief,

18

asserting that defendants have violated his right to adequate medical care under the Eighth

19

Amendment. Dkt. 32, pp. 15-16. He is proceeding with this action *pro se* and *in forma pauperis*.

20

This Report and Recommendation pertains to two motions to dismiss under Federal Rule

21

of Civil Procedure (FRCP) 12(b)(6), Dkt. 38, 49, and two motions by plaintiff for preliminary

22

injunctive relief, Dkt. 24, 44. For the reasons set forth below, the undersigned recommends that

23

the Court grant the motions to dismiss with prejudice and deny the motions for preliminary injunctive relief.

**I. MOTIONS TO DISMISS, DKT. 38, 49**

**A.  Background**

The state agency defendants previously filed a motion to dismiss. Dkt. 21. The undersigned recommended that the Court grant that motion because those defendants were not "persons" for purposes of a suit under 42 U.S.C. § 1983. Dkt. 34.

Before the Court ruled on that report and recommendation, an overlapping set of defendants filed another motion to dismiss. Dkt. 38. Those defendants include the Washington State Department of Corrections (DOC) Health Services of Monroe Corrections Center Special Offender Center, DOC Health Services of Stafford Creek Corrections Center, and the Medical Care Review Committee (collectively "state agency defendants"), along with individual defendants Charles Casey, Scott Light, and Stephen Sinclair. *Id.*

The Court declined to adopt the report and recommendation, Dkt. 34, because the report and recommendation did not address plaintiff's Amended Complaint. Dkt. 41; *see* Dkt. 32 (First Amended Complaint). The Court accordingly struck the state agency defendants' prior motion to dismiss, Dkt. 21, and re-referred the case for the undersigned to consider the defendants' new motion to dismiss, Dkt. 38, in light of the Amended Complaint. Dkt. 41. Plaintiff has responded to the new motion to dismiss. Dkt. 43.

Separately defendant Michael Furst, M.D., filed a separate motion to dismiss under FRCP 12(b)(6). Dkt. 23. The undersigned recommended that the Court grant that motion on the basis that plaintiff failed to allege facts from which the Court could infer that Dr. Furst was deliberately indifferent to his serious medical need. Dkt. 33. The Court declined to adopt that

report and recommendation, as well, because the report and recommendation did not address plaintiff's Amended Complaint. Dkt. 41. The Court struck as moot Furst's prior motion to dismiss. *Id.* Defendant Furst has since filed a second motion to dismiss. Dkt. 49. Plaintiff has responded to that motion, and the defendant filed a reply. Dkt. 52, 53.

This report and recommendation addresses both non-moot motions to dismiss.

**B.  Standard of Review**

A pro se complaint must be liberally construed. *Mangiaracina v. Penzone,* 849 F.3d 1191, 1195 (9th Cir. 2017). To survive a motion to dismiss under FRCP 12(b)(6), a plaintiff must state "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim is considered facially plausible when the facts allow the court to reasonably infer that the defendant is liable under the law for the acts or omissions that are alleged. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing (1) the conduct the plaintiff complains of was committed by a person acting under the color of state law; and (2) the conduct deprived the plaintiff of a federal constitutional or statutory right. *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).

**C.  State Agency Defendants**

Although a plaintiff can maintain a § 1983 claim against a person acting under color of state law, *see Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986), neither a state, nor a state agency that is an arm of the state, is a "person" for purposes of § 1983. *See Howlett v. Rose*, 496 U.S. 356, 365 (1990). This rationale applies to state agencies such as the DOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Sable Comm'ns of California Inc. v. Pac. Tel. & Tel. Co.*, 890 F.2d 184, 191 (9th Cir.

1989). Similarly, regarding requests for damages, "officials acting in their official capacities are [not] 'persons' under § 1983." *Will*, 491 U.S. at 71.

Plaintiff does not respond to defendants' argument that the state agency are not "persons" under § 1983, and that plaintiff's § 1983 claims against them for damages therefore must be dismissed. Dkt. 43; *see* Dkt. 34, 38. Defendants' argument is persuasive and supported by case law. *See Will*, 491 U.S. at 70 (state agency is not "person" and thus not liable under § 1983). The new allegations in the Amended Complaint—in particular, that DOC and the CRC "have a long history of" denying necessary medical care, as shown by an attached press release—do not change this principle of § 1983 law. *See* Dkt. 32, pp. 13, 207-09. Therefore, the Court should grant defendants' motion to dismiss regarding DOC Health Services of Stafford Creek Corrections Center, DOC Health Services of Monroe Corrections Center Special Offender Center, and the Medical Care Review Committee.

**D. Individual Defendants**

1. <u>Plaintiff does Not State a Claim for Relief under the Eighth Amendment against Defendants Casey, Light, or Sinclair.</u>

To show that a defendant's conduct deprived the plaintiff of a federal constitutional or statutory right as required under § 1983, the plaintiff must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). The plaintiff must allege that a specific injury resulted from the conduct of a particular defendant and that an affirmative link existed between the injury and that defendant's conduct. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

REPORT AND RECOMMENDATION - 4

1    Plaintiff asserts that defendants Casey, Light, and Sinclair deprived him of his Eighth

2 Amendment right to adequate medical care. He also asserts that Casey failed to protect him from

3 serious harm, also in violation of the Eighth Amendment. Plaintiff has not adequately pleaded

4 either claim.

5    To set forth an Eighth Amendment claim for failure to provide medical treatment, a

6 plaintiff must allege facts that support two elements.

7    First, the plaintiff must show a serious medical need, meaning the defendant's failure to

8 treat the plaintiff's condition could cause "further significant injury or the unnecessary and

9 wanton infliction of pain." *Lemire v. California Dept. of Corrections & Rehabilitation*, 726 F.3d

10 1062, 1081 (9th Cir. 2013).

11    Second, the plaintiff must show that the defendant's response to the need was deliberately

12 indifferent. *Lemire*, 726 F.3d at 1082. This requires (a) a purposeful act or failure to respond to

13 the plaintiff's pain or possible medical need, and (b) harm caused by the indifference. *Jett v.*

14 *Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). The defendant must know of and disregard an

15 excessive risk to the plaintiff's health or safety. The defendant "must both be aware of facts from

16 which the inference could be drawn that a substantial risk of serious harm exists, and he must

17 also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Accordingly, mere

18 indifference, negligence, or medical malpractice will not support a deliberate indifference claim.

19 *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980). A mere difference of opinion

20 between the prisoner and prison medical authorities regarding treatment does not constitute

21 deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). Rather, the

22 defendant must have chosen a course that was "medically unacceptable under the circumstances"

23 and done so in conscious disregard of an excessive risk to the plaintiff's health. *Id.*

REPORT AND RECOMMENDATION - 5

Here, plaintiff alleges the following facts in his Amended Complaint: Around September 2014, he began experiencing "neurological disturbances such as inability to focus, mental fatigue, short-term memory loss, general mental fogginess, and strange speech and cognition errors." Dkt. 32, p. 4. These symptoms "came over him in waves" that "would leave behind permanent damage," including difficulty studying, short-term memory problems, "lingering linguistic and logical difficulties," "lingering fatigue, slowness, and fogginess," and changes to his personality. *Id.* Each experience causes plaintiff "progressively more intense mental distress and suffering." Dkt. 32, p. 5.

Plaintiff alleges that he suspected he was suffering from a condition caused by a neurological illness and/or exposure to toxins. *Id.* He told defendant Scott Light, PAC, about these symptoms on June 22, 2015. Dkt. 32, p. 6. He told Mr. Light and other staff that he was afraid to return to his unit because he feared further exposure to whatever was causing his symptoms. *Id.* Prison staff sent him to a "suicide watch" cell, where he spent about a week. *Id.* Prison staff released Mr. Bistryski back to his unit on June 30, 2015. Dkt. 32, p. 7. Three days later, in an effort to be moved away from what he suspected to be causing his symptoms, plaintiff made "several superficial cuts on his left wrist." *Id.* His symptoms resumed almost a year later, in June 2016, after he had moved to Monroe Corrections Center. Dkt. 32, p. 8.

   a.  *Scott Light, PAC*

Plaintiff appears to base his claim against Light entirely on the interaction on June 22, 2015, in which plaintiff told Light about his neurological symptoms and suspicion they were caused by toxins. Dkt. 32, pp. 6, 15. Light's report, which plaintiff attached to the Amended Complaint, stated:

> Mr. Bistryski's exam today is reassuring. Although I would always want to be careful to dismiss complaints none of his H & P would suggest any particular organic or induced medical or neurological problem. I've asked for MH's assistance with evaluating him today. I am going to obtain some routine lab work today.

Dkt. 32, p. 56.

Plaintiff was subsequently placed on suicide watch for about a week. Dkt. 32, p. 6. After he was transferred back to his unit, he made the "superficial cuts on his left wrist." Dkt. 32, p. 7. Plaintiff does not allege that Light played a specific role in the decisions to place him in a "suicide watch" cell or to transfer him back to his unit. *See* Dkt. 32, pp. 6-7.

Plaintiff's Amended Complaint does not state facts from which the Court could reasonably infer that Light was deliberately indifferent to a serious medical need. *See Iqbal*, 556 U.S. at 678. The Amended Complaint does not plausibly allege that Light was subjectively aware of a substantial risk of harm to plaintiff. Although plaintiff alleges he informed Light of his symptoms, Light's notes on the encounter indicate that he did not believe those symptoms "would suggest any particular organic or induced medical or neurological problem." Dkt. 32, p. 56; *see Teixeira v. Cty. of Alameda*, 873 F.3d 670, 679 & n.11 (9th Cir. 2017) (Court considers attachments to the complaint in ruling on a motion to dismiss). Thus, even liberally construed, the Amended Complaint and its attachments indicate that Light did not actually "draw the inference" that plaintiff was at substantial risk of serious harm, as a deliberate indifference claim requires. *See Farmer*, 511 U.S. at 837.

Moreover, even if Light had drawn such an inference, the Amended Complaint does not plausibly allege that his actions were medically unacceptable based on that information. *See Jackson*, 90 F.3d at 332. Instead, Light referred plaintiff for blood testing and a mental health evaluation. Dkt. 32, p. 56.

1    For both these reasons, the Court should dismiss plaintiff's claim against Light.

2        *b.  Secretary Stephen Sinclair*

3        Plaintiff bases his claim against Sinclair on Sinclair's role as Secretary of DOC in

4    "adopting, implementing, and enforcing policies and procedures to ensure that all prisoners in

5    DOC's custody receive constitutionally adequate medical care," including Sinclair's "authority

6    to direct the activities of subordinate officers and other DOC employees" such as the other

7    individual defendants. Dkt. 32, pp. 3, 14, 16.

8        A plaintiff in a § 1983 action must allege facts showing how defendants individually

9    caused or personally participated in causing the harm alleged in the complaint. *Arnold v. IBM*,

10   637 F.2d 1350, 1355 (9th Cir. 1981). A plaintiff may not hold supervisory personnel liable under

11   § 1983 for constitutional deprivations under a theory of supervisory liability. *Taylor v. List*, 880

12   F.2d 1040, 1045 (9th Cir. 1989). Rather, a plaintiff must allege some facts that would support a

13   claim that a supervisory defendant either personally participated in the alleged deprivation of

14   constitutional rights, knew of the violations and failed to act to prevent them, or promulgated or

15   implemented a deficient policy that itself violated constitutional rights and was the moving force

16   that resulted in the constitutional violation. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1076

17   (9th Cir. 2012); *Star v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011).

18       Here, although plaintiff refers to Sinclair's role in directing and implementing DOC

19   policy, he does not identify a particular policy that violated his constitutional rights. *See* Dkt. 32,

20   p. 14; *OSU Student Alliance*, 699 F.3d at 1076. Nor does he allege that Sinclair knew of and

21   failed to act upon the particular violations he alleges. *See id.* Instead, plaintiff appears to base his

22   claim against Sinclair solely on Sinclair's role in supervising other defendants. *See* Dkt. 32, p.

23

14. As this not a basis for liability under § 1983, the Court should grant defendants' motion to

dismiss with respect to Sinclair. *See Taylor*, 880 F.2d at 1045.

     *c.  Charles Casey*

     The Amended Complaint alleges that, after plaintiff told a nurse about his symptoms and

his suspicion that he was being poisoned and preferred to stay in the hospital for his safety,

defendant Casey threatened to infract plaintiff if he did not return to his cell. Dkt. 32, pp. 5-6.

Plaintiff alleges that Casey told him he would be placed in "the hole" if he refused and that this

would lead to slower medical treatment. Dkt. 32, pp. 6-7. Plaintiff alleges he returned to his cell

under protest and the next day was seen by medical and mental health staff. Dkt. 32, p. 6.

     Plaintiff asserts that he has stated an Eighth Amendment claim against Casey under both

a deliberate indifference theory and a "failure to protect" theory. Dkt. 32, pp. 15-16; Dkt. 43, pp.

3-7.

     Prison officials who are not medical providers are not deliberately indifferent when they

defer to the judgment of treating medical providers. *See Spruill v. Gillis*, 372 F.3d 218, 236 (3rd

Cir. 2004); *Hayes v. Snyder*, 546 F.3d 516, 526-28 (7th Cir. 2008); *cf. Peralta v. Dillard*, 744

F.3d 1076, 1086-87 (9th Cir. 2014) (non-specialist doctor was not deliberately indifferent when

he deferred to specialist).

     The Amended Complaint does not state a plausible claim that Casey was deliberately

indifferent to plaintiff's serious medical need. First, the complaint does not allege facts from

which the Court could infer that Casey knew of and disregarded a substantial risk of a serious

medical need. Second, even if Casey knew of such a risk, the complaint does not allege facts

from which the Court could infer that Casey's actions were unreasonable, as Casey told plaintiff

he would be seen by medical providers the next day and plaintiff was actually seen. *See* Dkt. 32,

1    pp. 6-7. As defendants point out, plaintiff does not allege that any delay in care in that one-day

2    period caused him substantial harm, and such an allegation would be implausible. *See* Dkt. 38, p.

3    7. Accordingly, plaintiff fails to state a claim of deliberate indifference against Casey.

4          The Amended Complaint also fails to plausibly allege that Casey violated plaintiff's

5    Eighth Amendment rights by failing to protect him from a substantial risk of serious harm. A

6    claim under a "failure to protect" theory requires the plaintiff to allege deprivation that is

7    "'objectively, sufficiently serious'" and that "prison officials had a 'sufficiently culpable state of

8    mind,' acting with deliberate indifference." *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir.

9    2005) (quoting *Farmer*, 511 U.S. at 834). Here, plaintiff's statements to a nurse that he believed

10   he may have been exposed to toxins do not show that Casey knew of a substantial risk of serious

11   harm to plaintiff if plaintiff returned to his cell. Nor does plaintiff allege facts showing that the

12   deprivation Casey caused was "'objectively, sufficiently serious:'" the urinalysis result was

13   negative, and plaintiff does not plausibly allege that he suffered any harm. *Hearns*, 413 F.3d at

14   1040 (quoting *Farmer*, 511 U.S. at 834); *see* Dkt. 32, p. 6.

15         Finally, plaintiff asks that the Court decline to dismiss Casey as a defendant because the

16   injunction he requests against other defendants—that those defendants allow him to see a

17   neurologist—"is necessary to determine Defendant Casey's level of liability to Plaintiff." Dkt.

18   43, p. 7. The results of a future neurological exam are not relevant to the issue before the Court

19   of whether the Amended Complaint states a facially plausible Eighth Amendment claim against

20   Casey. *See Iqbal*, 556 U.S. at 678.

21         Accordingly, the Court should grant defendants' motion to dismiss the plaintiff's claims

22   against Casey, as well.

23

REPORT AND RECOMMENDATION - 10

2.  <u>Plaintiff's Claim for Injunctive Relief is Moot as to Defendants Casey and Light</u>

Defendants also contend that the Court should dismiss plaintiff's claims for injunctive relief against defendants Casey and Light because those claims are moot. The Court does not need to reach this argument if it dismisses all claims against Casey and Light. If it does reach the issue, however, the Court should dismiss the claims as moot.

Except in certain circumstances that do not apply here, a prisoner's release or transfer to a new facility moots a claim for injunctive relief based on conditions at the prisoner's prior facility. *Walker v. Beard*, 789 F.3d 1125, 1132 (9th Cir. 2015).

Defendants Light and Casey work at Stafford Creek Corrections Center (SCCC). *See* Dkt. 32 at 2, ¶¶ VI B 2 and B4. Plaintiff was transferred to MCC-SOU in July 2015. *See* Dkt. 32 at 7, ¶ 29. There is no indication from the record that Mr. Light or Lieutenant Casey have any ability to influence plaintiff's present treatment. Accordingly, the Court should grant defendants' motion to dismiss as moot any claims for injunctive relief against Light and Casey. *See Nelson v. Heiss*, 271 F.3d 891, 897 (9th Cir. 2001) ("[W]hen a prisoner is moved from a prison, his action will usually become moot as to conditions at that particular facility. . . . We, therefore, agree that Nelson's action for injunctive relief against the [officials at plaintiff's former prison] has become moot.").

3.  <u>Plaintiff does Not State a Claim for Relief under the Eighth Amendment against Defendant Furst.</u>

Plaintiff asserts that defendant Durst also deprived him of his Eight Amendment right to adequate medical care, in that he was deliberately indifferent to a serious medical need. In addition to the facts recited above, plaintiff alleges he spoke with Dr. Furst during the week he spent in a "suicide watch" cell in June 2015, and that he requested a change of facilities to escape

1  the threat he suspected. Dkt. 32, p. 6. Dr. Furst and other staff suspected that plaintiff was

2  delusional and, citing costs, declined to conduct an IQ test "or more sensitive neurological

3  examinations" as plaintiff requested. *Id.* As noted above, prison staff released plaintiff back to

4  his unit on June 30, 2015, and three days later he made "several superficial cuts on his left wrist"

5  in an effort to be relocated. *Id.* His symptoms then ceased for almost a year before resuming in

6  June 2016, after he had moved to a different prison. Dkt. 32, p. 8.

7        Responding to Dr. Furst's second motion to dismiss, Dkt. 49, plaintiff contends that the

8  Amended Complaint shows that Dr. Furst knew "of Plaintiff's history of self-harm and

9  concurrent trauma" and that "Plaintiff made Dr. Furst as aware as he possibly could of the risk of

10 his mental condition deteriorating." Dkt. 52, p. 4. He adds that his condition did in fact

11 deteriorate, "resulting in injuries to Plaintiff in the forms of disfigurement (Dkt. 32, ¶ 27) and an

12 estimable decline in mental functioning (that could be based on the measurements that have

13 already been made [see Dkt. 32, Ex.s U and AJ])." Dkt. 52, p. 4. He asserts that Furst's refusal to

14 conduct "the further testing that the situation called for amounts to deliberate indifference and

15 has injured Plaintiff in the form of severely delayed care." *Id.* (citing Dkt. 32, p. 7).

16       With respect to Dr. Furst's involvement, the Amended Complaint does not set forth

17 different facts from the original Complaint. *See* Dkt. 6, 32. The Amended Complaint thus does

18 not change the conclusion of the prior report and recommendation that plaintiff has not alleged

19 facts from which the Court could infer that Dr. Furst was deliberately indifferent to his medical

20 need. *See* Dkt. 33.

21       Plaintiff has not alleged facts to establish that Dr. Furst knew of and disregarded an

22 excessive risk to plaintiff's health. *See Farmer*, 511 U.S. at 837. Plaintiff's own allegations about

23 Dr. Furst's state of mind—that he maintained that plaintiff had no evidence for his claims about

his mental condition and suggested that plaintiff was delusional— show that Dr. Furst lacks

knowledge of plaintiff's medical need. *See* Dkt. 32, p. 6. Plaintiff's allegation fails to state a

claim that Dr. Furst had the required state of mind for deliberate indifference. If Dr. Furst

mistakenly rejected plaintiff's complaints as unbelievable, then his conduct arguably could

support inferences of negligence; but negligence alone cannot constitute deliberate indifference.

*See Broughton*, 622 F.2d at 460.

In addition, even if plaintiff is correct in separately alleging that Dr. Furst wrote plaintiff

was "not materially delusional," Dkt. 32, p. 7, this allegation would not show that Dr. Furst was

deliberately indifferent. Plaintiff has pleaded no facts indicating that Dr. Furst actually drew the

inference that plaintiff was at substantial risk of serious harm. *See Farmer*, 511 U.S. at 837. Nor

does the complaint allege circumstances that would permit a plausible inference that Dr. Furst

must have known plaintiff was at risk of serious harm. "In short, even when liberally construed,

Plaintiff's allegations do not state a plausible claim that Dr. Furst was deliberately indifferent to

Plaintiff's serious medical needs. *See Iqbal*, 556 U.S. at 678." Dkt. 33.

**II. MOTIONS FOR PRELIMINARY INJUNCTIVE RELIEF**

**A.  Background**

Plaintiff filed a previous Motion for a Temporary Restraining Order (TRO) and

preliminary injunction on September 27, 2017. Dkt. 24. In an earlier Report and

Recommendation, the undersigned recommended that the Court deny the motion. Dkt. 35. The

Court declined to adopt the prior Report and Recommendation to deny preliminary injunctive

relief because that Report and Recommendation addressed the allegations in the original

Complaint, Dkt. 6, whereas plaintiff had filed an Amended Complaint, Dkt. 32. Dkt. 41, p. 3.

1  Accordingly, the motion is now being reviewed in light of the Amended Complaint and a

2  subsequent Motions to Dismiss by defendants, Dkt. 38, 49; see also, Dkt. 41, p. 3.

3      Plaintiff then filed a second memorandum in support of his motion. Dkt. 44. Plaintiff

4  states that the argument in that memorandum is substantially similar to the argument in

5  plaintiff's original motion, Dkt. 24, and so "should not prejudice the opposing party." Dkt. 44, p.

6  1. Plaintiff did include new arguments in the second memorandum, however. *See id.*, pp. 3, 5-6.

7  Defendants responded to the second memorandum. Dkt. 48. Because plaintiff indicates that the

8  new memorandum is intended as a motion superseding the prior motion, Dkt. 24, and defendants

9  have had an opportunity to respond, the undersigned recommends that the Court deny as moot

10  the prior motion, Dkt. 24.

11      Plaintiff's renewed Motion for Preliminary Injunctive Relief asks that the Court order

12  defendants DOC Health Services of Monroe Corrections Center Special Offender Center,

13  Medical Care Review Committee, Dr. G. Steven Hammond, and Advanced Registered Nurse

14  Practitioner (ARNP) Sheryl Allbert to arrange for an outside neurologist to examine plaintiff and

15  to show cause why they should not be ordered to "provide a medically appropriate course of

16  diagnosis." Dkt. 44, 44-1. In the above discussion, the undersigned recommends granting a

17  Motion to Dismiss by defendants Washington State Department of Corrections (DOC) Health

18  Services of Monroe Corrections Center Special Offender Center, DOC Health Services of

19  Stafford Creek Corrections Center, and the Medical Care Review Committee (collectively "state

20  agency defendants"), and individual defendants Charles Casey, Scott Light, and Stephen

21  Sinclair, and a Motion to Dismiss by Michael Furst, M.D. But because plaintiff names other

22  defendants in his proposed Temporary Restraining Order, Dkt. 44-1, p. 2, plaintiff's request for

23  injunctive relief is not entirely moot.

**B. Standard of Review**

The basic function of preliminary injunctive relief is to preserve the status quo ante litem pending a determination of the action on the merits. *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980). The standards for issuing temporary restraining orders are "substantially identical" to the standards for issuing preliminary injunctions. *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brushy & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

Parties seeking injunctive relief must show that they are likely to succeed on the merits, that they are likely to suffer irreparable harm without preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit has set forth a "serious questions" variation of this standard, under which "a preliminary injunction is proper if there are serious questions going to the merits; there is a likelihood of irreparable injury to the plaintiff; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

Under either framing, preliminary injunctive relief is "'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez*, 680 F.3d at 1072 (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). To fulfill the "irreparable harm" requirement, the moving party "must do more than merely allege imminent harm," but "must demonstrate immediate threatened injury." *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991). The Court has discretion in determining what evidence to consider in ruling on a motion for preliminary injunctive relief. *See Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394

1   (9th Cir.1984) ("The urgency of obtaining a preliminary injunction necessitates a prompt

2   determination and makes it difficult to obtain affidavits from persons who would be competent to

3   testify at trial. The trial court may give even inadmissible evidence some weight, when to do so

4   serves the purpose of preventing irreparable harm.")

5   **C.  Plaintiff's Request to Enjoin State Agency Defendants is Moot.**

6     As discussed above, the undersigned finds that plaintiff fails to state a claim against the

7   state agency defendants. Accordingly, plaintiff's Motion for a Temporary Restraining Order

8   (TRO) and Preliminary Injunction should be denied as moot as to those defendants.

9   **D.  Plaintiff's Claims against Defendants Allbert and Hammond are Unlikely to Succeed on**
    **the Merits.**

10    Plaintiff asserts that defendants, including ARNP Allbert and Dr. Hammond, deprived

11  him of his Eight Amendment right to adequate medical care. Plaintiff alleges ongoing

12  "neurological disturbances such as inability to focus, mental fatigue, short-term memory loss,

13  general mental fogginess, and strange speech and cognition errors." Dkt. 32, p. 4. These

14  disturbances have caused him worsening cognitive difficulties. Dkt. 32, p. 5. He began noticing

15  these symptoms in September 2014. Dkt. 32, p. 4. He informed staff at SCCC about them in June

16  2015. Dkt. 32, p. 6. The symptoms continued until July 2015, when plaintiff was transferred

17  from SCCC to MCC-SOU. Dkt. 32, p. 8. They then resumed in June 2016. Dkt. 32, p. 8. Plaintiff

18  suspects that his symptoms are caused by neurological illness and/or exposure to toxins. *Id.*

19  Plaintiff has received IQ testing and an MRI, but was denied a consultation with a neurologist.

20  Dkt. 32, pp. 9-12.

21    First, plaintiff has not shown that he is likely to prevail on an Eighth Amendment claim

22  against ARNP Allbert.

23

1    ARNP Allbert is a medical provider at MCC-SOU. *See* Dkt. 32, pp. 3, 78. Plaintiff

2    alleges that ARNP Allbert is responsible for scheduling prisoners at MCC-SOU for outside

3    appointments when the prisoners require specialized treatment or evaluation. Dkt. 24-1, p. 2.

4    ARNP Allbert met with plaintiff in July 2015, soon after he was transferred to MCC-SOU. Dkt.

5    32, p. 78. Plaintiff told ARNP Allbert that he believed he had been exposed to a chemical

6    compound, Dichloromethane, and that it was causing his neurological problems. *Id.*

7    Plaintiff continued to see medical providers regularly regarding his complaints. ARNP

8    Allbert saw plaintiff again in August 2016. Dkt. 29-1, p. 15. Plaintiff told ARNP Allbert that

9    someone was "messing with his food" and he would not eat anything other than salad. *Id.* ARNP

10   Allbert discussed with him the likelihood that this was not real, and he acknowledged it could be

11   a psychiatric issue. ARNP Allbert assessed him as having paranoia. *Id.*

12   ARNP Allbert presented plaintiff's case to the Care Review Committee in March 2017.

13   Dkt. 29-1, p. 25. The Committee determined that plaintiff's request for a neurology consultation

14   did not meet the standard of medical necessity. *Id.*

15   As noted above, to demonstrate deliberate indifference plaintiff must show that the

16   defendant knew of and disregarded an excessive risk to the plaintiff's health or safety. *Farmer*,

17   511 U.S. at 837. And to obtain preliminary injunctive relief, plaintiff must show "immediate

18   threatened injury." *Associated Gen. Contractors*, 950 F.2d at 1410. The record at this stage

19   contains neither showing.

20   Instead, the materials submitted by both plaintiff and the defendants indicate that plaintiff

21   has seen numerous health care providers who have tried to help him address his symptoms,

22   including offering testing for those symptoms and recommending that he resume taking bipolar

23   medications. *See, e.g.*, Dkt. 32, pp. 26, 30, 137, 143, 152; Dkt. 29-1, pp. 21, 24. Most recently, in

August 2017, Marlinda Pruden, Ph.D., administered "neuro-psychological testing battery based on [plaintiff's] concerns." Dkt. 29-1, p. 34; Dkt. 32, pp. 13-14, 211-12.

None of those records indicate that any of plaintiff's medical providers have recommended a neurology consultation or found one to be necessary. Plaintiff points to Dr. Margarita Ashirova's notes that plaintiff's scores on cognitive testing declined between 2006 and 2016. Dkt. 32, pp. 9, 142-43. Dr. Ashirova recommended further assessments "to identify the nature of this decline." Dkt. 32, p. 143. But Dr. Ashirova found that plaintiff's belief about the nature of the decline indicated delusional thinking. *Id.* She diagnosed plaintiff primarily with bipolar disorder and made secondary diagnoses of posttraumatic stress disorder, social anxiety disorder, and alcohol use disorder. *Id.* She made only a provisional diagnosis of unspecified neurocognitive disorder. *Id.* Nothing in Dr. Ashirova's notes implies that plaintiff's possible neurological condition constituted an "immediate threatened injury." *See Associated Gen. Contractors*, 950 F.2d at 1410.

Plaintiff further alleges that testing by Dr. Pruden in August 2017 showed that testing "of auditory processing and memory" showed plaintiff "had a relative weakness on tests examining the ability to recall semantically related word associates after immediate and delayed recall." Dkt. 32, p. 13. Plaintiff also asserts that Dr. Pruden's testing showed his processing speed score had declined from 93-110 in 2006 to 91-96 in 2016. Dkt. 32, pp. 13-14. Plaintiff asserts "even a layman could reasonably perceive" that he has "a medical problem that deserves immediate attention." Dkt. 32, pp. 13-14. But this is far from evident from Dr. Pruden's report, which plaintiff attached to the complaint: the first finding plaintiff points to, regarding auditory processing and memory, only shows that he scored lower in that area than in others; in nearly every other area, Dr. Pruden described his scores as "superior" or "above average." Dkt. 32, pp.

211-12. The second finding, regarding his processing speed, shows a range that, while lower than

his score from 2006, overlaps with that score and indicates "Average abilities." Dr. Pruden gave

no indication that the test results showed the sharp decline plaintiff alleges. Dkt. 32, p. 212

(noting "slight decline from working memory abilities of 2016," while "significant differences

were not found for attention and executive functioning abilities"). As with Dr. Ashirova's notes,

Dr. Pruden's findings do not show a neurological condition amounting to an "immediate

threatened injury."

       The record before the Court thus indicates that plaintiff is unlikely to succeed in proving

that ARNP Allbert drew an inference that an excessive risk of serious harm existed and failed to

act on it. *See Farmer*, 511 U.S. at 837; *Winter*, 555 U.S. at 20. Likewise, this record does not

show an "immediate threatened injury" warranting preliminary injunctive relief. *See Associated

Gen. Contractors*, 950 F.2d at 1410.

       Second, plaintiff also fails to show a likelihood of success in his claims against Dr.

Hammond.

       Dr. Hammond is the chief medical officer for DOC. Dkt. 32, p. 14. The only involvement

by Dr. Hammond that the Amended Complaint alleges is in failing "to take steps to ensure that

policies were in place or specific steps were taken to ensure that Plaintiff's serious medical

condition was adequately diagnosed and treated directly." Dkt. 32, p. 16. Although plaintiff did

not name Dr. Hammond in his first motion for a TRO, Dkt. 24, he does so in his proposed order

in renewing that motion, Dkt. 44-1, p. 2.

       A plaintiff in a § 1983 action must allege facts showing how defendants individually

caused or personally participated in causing the harm alleged in the complaint. *Arnold v. IBM*,

637 F.2d 1350, 1355 (9th Cir. 1981). A plaintiff may not hold supervisory personnel liable under

1  § 1983 for constitutional deprivations under a theory of supervisory liability. *Taylor v. List*, 880

2  F.2d 1040, 1045 (9th Cir. 1989). Rather, a plaintiff must allege some facts that would support a

3  claim that a supervisory defendant either personally participated in the alleged deprivation of

4  constitutional rights, knew of the violations and failed to act to prevent them, or promulgated or

5  implemented a deficient policy that itself violated constitutional rights and was the moving force

6  that resulted in the constitutional violation. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1076

7  (9th Cir. 2012); *Star v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011).

8      Here, although the Amended Complaint refers to Dr. Hammond's role in implementing

9  DOC policy, he does not identify a particular policy that violated his constitutional rights. *See*

10  Dkt. 32, p. 14; *OSU Student Alliance*, 699 F.3d at 1076. Nor does he allege that Dr. Hammond

11  knew of and failed to act upon the particular violations he alleges. *See* Dkt. 32, p. 14. Instead,

12  plaintiff appears to base his claim against Dr. Hammond solely on the Dr. Hammond's role in

13  supervising DOC's medical care operations. *See* Dkt. 32, p. 14. As this alone is not a basis for

14  liability under § 1983, plaintiff is not likely to succeed in his claim against Dr. Hammond. *See*

15  *Taylor*, 880 F.2d at 1045.

16                                    <u>CONCLUSION</u>

17      Based on the foregoing discussion, the undersigned recommends:

18  -    That because plaintiff has failed to state a claim for relief against DOC Health

19       Services of Monroe Corrections Center Special Offender Center, DOC Health

20       Services of Stafford Creek Corrections Center, Medical Care Review Committee,

21       Charles Casey, Scott Light, and Stephen Sinclair, the Court **GRANT** those

22       defendants' motion to dismiss, Dkt. 38.

23

1    -    That because plaintiff has failed to state a claim for relief against Michael Furst,

2         M.D., the Court **GRANT** Dr. Furst's motion to dismiss, Dkt. 49.

3    -    That because plaintiff has not met the standard to obtain a temporary restraining order

4         or a preliminary injunction as to any defendant, the Court **DENY** plaintiff's motion

5         for a temporary restraining order and preliminary injunction, Dkt. 44. The

6         undersigned also recommends that the Court **DENY AS MOOT** plaintiff's prior

7         motion for preliminary injunctive relief, Dkt. 24.

8         The parties have **fourteen (14) days** from service of this Report and Recommendation to

9    file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 72(b); *see also* FRCP 6. Failure to

10   file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*,

11   474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for

12   consideration on **April 27, 2018**, as noted in the caption.

13        Dated this 11th day of April, 2018.

14

15                                            Theresa L. Fricke
                                             United States Magistrate Judge

16

17

18

19

20

21

22

23